Mr. Hermann, yes, Hermann v. Colvin. Mr. Schultz. May it please the Court, Your Honors, Barry Schultz on behalf of the plaintiff, Michelle Hermann. After several appeals and many years of fighting her claim, Hermann appeared before the ALJ in 2010 and he denied her claim. Ms. Hermann appealed that to the Appeals Council and the Appeals Council found that based on the ALJ's findings, the ALJ should have at least found her disabled as of her 55th birthday and so the Appeals Council entered an order awarding SSI benefits to Ms. Hermann as of her 55th birthday which is in September of 2010. So this claim deals with the SSI claim from 2003 up until through September 5th, 2010 when Ms. Hermann was awarded benefits. Was there an exacerbation of her conditions around age 55? No, the award was based on their past relevant work and was limited to at most light exertional work to be found disabled based on the medical vocational guidelines. So that was the reason for that finding. This claim involves the consultative evaluation of Dr. Holton. Dr. Holton was the third consultative examiner that Social Security sent Ms. Hermann to see and he was the most recent examiner. The ALJ's decision contains an error which the Commissioner concedes is an error and the District Court found was an error but found to be harmless which is that in characterizing the report of Dr. Sands, and Dr. Sands was a non-examining state agency doctor, the ALJ's decision states that Dr. Sands discredited the opinion of Dr. Holton for various specific reasons. The problem is that Dr. Sands did not discredit Dr. Holton's opinion but actually discredited a different consultative examiner's opinion because Dr. Holton did not evaluate, did not examine Ms. Hermann until after Dr. Sands had written his report. Now the District Court found this was a harmless error but plaintiff argues that it's actually harmful because the court cannot tell how the ALJ would have ruled had he realized that Dr. Sands was not discrediting Dr. Holton's opinion. I mean Dr. Sands indicated that this other doctor, Dr. Kiansky, ignored evidence of symptom magnification that went on during the examination. So that's a very specific and fairly egregious error if it occurred but it wasn't Dr. Holton who made that error. In addition, after doing a complete examination and evaluating some of the evidence that the administration sent to him, Dr. Holton opined among other things that Ms. Hermann could only occasionally use her hands for what's called fingering, fine finger manipulation, and handling, gross finger manipulation. And the vocational expert testified that if that limitation was added to the functional capacity limitations that Ms. Hermann could not do any of the jobs that the ALJ found that she could do. So therefore the ALJ Step 5 decision would not be supported. And in fact the vocational expert said with that limit the claimant would be limited to at best sedentary work and based on the medical vocational guidelines that would give Ms. Hermann at least an additional five years of SSI benefits. The ALJ rejected Dr. Holton's opinion concerning the claimant's limitations in handling and fingering because of certain normal findings. There was normal upper extremity strength and there was normal sensation throughout the body. The problem from plaintiff's perspective is that Dr. Holton made other findings including specific findings as to Ms. Hermann's grip strength. And her grip strength was significantly limited. And as we point out in our brief that would be a basis, a medical basis, for finding limits in the ability to handle and use the fingers, particularly handling. And all the jobs that the ALJ found for the claimant required frequent handling. What the ALJ should have done is re-contacted Dr. Holton. If the ALJ didn't understand why Dr. Holton gave an opinion that the claimant was so limited, he should have contacted Dr. Holton to find out. This court has held in the Garcia case and the Bjornsson case that consultative examiners that Social Security sends claimants to, they have no basis for wanting to do a favor to a claimant. They don't owe anything to the claimant. They're not trying to keep them as a patient. So why would Dr. Holton give this opinion unless he truly believed that the claimant was so limited? In Barnett v. Barnhart case, this court in quoting a Ninth Circuit case of Smolin stated, quote, if the ALJ thought he needed to know the basis of medical opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry. For example, by subpoenaing the physicians or submitting further questions to them. And then in the Davey v. Astru order, which is a non-presidential order, but again, the ALJ expressed concern that he didn't understand why, based on the doctor's findings, he gave a certain opinion as to functional limitations. And this court held that the ALJ should not have relied on his confusion or his lack of understanding to reject the doctor's opinion. And that's the same thing that happened here. If the ALJ didn't understand why Dr. Holton limited the claimant as he did, he should have contacted Dr. Holton. Or he could have called in a medical expert to advise him as to the significance of the medical findings in the case. But the ALJ did neither. Based on his own lay understanding of the evidence, he rejected Dr. Holton's opinion. In response, the commissioner states that, well, the first study that plaintiff cited in her opening brief, and that was cited to the district court, doesn't necessarily establish what grip strength means. But that almost establishes the point, which is that the ALJ didn't know the significance of reduced grip strength. And clearly, the claimant's grip strength in her left hand was about a third of that in her right hand. So even without knowing what the normative values are, it was clear that there was a significant reduction in the strength of the left hand. And yet the ALJ ignored that finding of grip strength altogether. And finally, Dr. Holton also was asked how long could the claimant stand and walk and sit throughout an eight-hour work day. And his response was that it was unlikely that Ms. Herman would be able to work a full work day. So he didn't answer the question because she couldn't do those things throughout an eight-hour work day. And that opinion is completely consistent with the opinion of the claimant's longtime treating physician, Dr. Daschauer, who on multiple occasions opined that Ms. Herman would be unable to sustain eight hours of work due to her fibromyalgia and degenerative disc disease in the lumbar spine. Again, the ALJ stated that Dr. Holton's findings didn't support his conclusion, but the ALJ had no basis for that finding in the record, and he should have contacted Dr. Holton if he wanted to know the reasons behind his opinion. Thank you, Your Honor. Thank you, Mr. Shultz. Mr. Truitt. May it please the Court, my name is Eric Truitt. I represent the Commissioner of Social Security in this appeal. Dr. Holton, a consultative examiner, checked boxes on a form that Herman could occasionally reach, handle, and figure. Right below these boxes, there was a space to indicate what clinical findings supported these conclusions, and Dr. Holton wrote, see page one. When you turn to page one of Dr. Holton's form that he completed, he simply listed two diagnoses, fibromyalgia and degenerative disc disease. But this seems not to have been the basis of the Administrative Law Judge's criticism of Dr. Holton. It seems to have been this error that Sands had criticized Holton's study. Isn't that a very serious error? Your Honor, if you look at the sequence of which the ALJ analyzed the medical opinions of record, he went through them in chronological, he went through the consultative examiners in chronological order, and then he discussed the opinion of Dr. Sands. And he did say in describing Dr. Sands' opinion, the state agency non-examining physician, he did make that as Scrivener's error. He did say Dr. Holton instead of Dr. Konsky or Sonsky, I'm not sure how to pronounce it. But if you look at how the ALJ actually analyzed Dr. Holton's opinion, the indication in the ALJ's actual analysis of Dr. Holton's opinion was not that Dr. Holton had relied on these entirely unsupported allegations of problems with distance perception or other things that were in Dr. Konsky's opinion. He simply was just summarizing the contents of Dr. Sands' opinion. So our belief is that there was a Scrivener's error there, but it did not actually... A Scrivener's error? What on earth are you talking about? Because he's accurately describing what Dr. Sands said. They said Dr. Holton instead of Dr. Konsky. That's why I believe it's a Scrivener's error because it's not as if he's simply... Everything else about it is correct except for the name of the doctor. And then if you look at Dr. Sands' opinion, he doesn't name the doctor by name. He simply says the CE. So I think in the process of preparing the decision that there was an error in listing the doctor that... You don't have any basis for what you're saying. And that's not in the magistrate judge's opinion. I mean, that was our argument. If you look at his... What about Mr. Schultz's point that here's Dr. Holton. He has no incentive to support the claimant. He's definite about her problems with her gripping things. Now if there's some reason why wouldn't the ALJ want to hear from Dr. Holton? Well, the ALJ did hear from Dr. Holton in the form that he completed. And as I indicated... No, no. Speak to him, right? Ask him a question. I mean, as Mr. Schultz pointed out, this was the third consultative examiner. It was at this point seven years after the claimant had initially filed her claim. At some point it's difficult to continue developing the record and continue asking questions about the basis for a particular checkbox, particularly where the form itself provides a space for the doctor to indicate which clinical findings support those. Let me ask you a different question. What is the source of the figures that the vocational expert gave about the number of jobs available in her region and in the state? Your Honor, I must confess I do not know specifically the answer to that question. We've never litigated that issue up to this point. I certainly can provide that information for you pursuant to Rule 28J, but I don't know those specific bases offhand. They're made up. Also, the statute requires the vocational expert to indicate the number of jobs in the nation as well as in the applicant's area and in the state. That wasn't done. The statute indicates that a significant number of jobs is either in the area in which the applicant is working or in the country. I believe that's the language. So my understanding is that you can meet that requirement in several ways. No. You're supposed to list area, region, and nation, because if there's a substantial number of jobs in any of those, then the applicant is not entitled to benefits. Well, take, for example, say there were 50,000 jobs available in Fort Wayne or around there. But there aren't. Well, there aren't, but I'm just saying that depending on the particular case... Well, there aren't very many jobs in her area, for example. Going back to where we haven't litigated that issue specifically, and I don't think that we know that if... Well, we've discussed that the figures appear to be mythical. I mean, there have been other cases in which that issue was raised. That issue was not raised here. But again, if you would like additional submissions on that, I certainly can provide that. So turning back to Dr. Holton's opinion, again, in instances where the form provides an opportunity for the doctor to explain the basis for his opinion to require the ALJ to contact a physician, especially in these circumstances, and further delay the proceedings... It's not a question of requiring in every case. The question is, given Holton's lack of bias, and given his expertise and the fact that he was quite definite about her grip problem, can the administrative law judge's discarding his testimony be justified on the basis of what the administrative law judge said? He seems to have relied heavily on this erroneous belief that Dr. Sands had trashed Holton's analysis. So where would you say, in the administrative law judge's opinion, is the most substantial criticism of Holton? There's a whole paragraph dedicated to Dr. Holden's opinion. As I indicated, the ALJ went through the consultative examiners in order, and then discussed Dr. Sands' opinion. Where were you? What were you talking about? So if you turn to... The analysis of the medical opinions begins on page 11 of the ALJ's decision, page 335 of the administrative record. It begins with... So you have Dr.... Oh, actually it begins even earlier, with the first examiner on page 334. That's Dr. Backus. And then he turns to, at the bottom of page 335 of the record, he turns to Dr.... What page is this in his opinion? Page 11 of the ALJ's decision. So at the bottom, that bottom paragraph is the paragraph dedicated to Dr.... No, it's Cianchi. Where's Holton? The top of page 12. Holton will be on the top of the next page. And so you have that whole paragraph that is... If you look at the paragraph in which the ALJ analyzes Dr. Sands' opinion, those mirror the reasons the ALJ gave for discounting Dr. Kosansky's opinion. They don't really match to the reasons that he gave for Dr. Holton's opinion. That was the basis... Now wait a second. What are you saying? I didn't follow that. So for example, if you look in the middle paragraph of page 12 of the ALJ's decision, page 336 of the record, there's... He's describing Dr. Sands' opinion. And that last sentence in the second paragraph, he commented that the opinion of consultative examiner Dr. Holden was not given weight because the deficits Dr. Holton noted upon examination were not What that's referring to is the problems, I believe, with coordination or depth perception that the ALJ noted were in Dr. Kosansky's report, but not documented by any other physician treating examiner. I have no idea what you're saying. Well, let me... I asked you, what is his criticism of Holton? Now clearly he borrowed what he thought was wrong. So what else is there? The criticism of Holton is in that top paragraph of page 12, 336. The first reason is that, and this is something that was agreed to in the district court, is that there was an inconsistency between a clinical finding of normal fine finger manipulation and the opinion indicating that she could only occasionally finger. There was also an inconsistency between normal strength in the extremities and a limitation to occasional reaching the ALJ... Well where, I don't understand, where in that top paragraph is there the inconsistency? If you look at the last sentence, page 336, this opinion is given little weight except as to the lifting limitations because Dr. Holton's examination findings of 5-5 muscle strength, normal sensation, and normal manipulative abilities are not consistent with limitations regarding reaching, handling, and fingering. Mm-hmm. Is that the key? I mean that's the... That's what survives after Dr. Sands is omitted? That's the primary basis for the ALJ's weighing of Dr. Holton's opinion. And again, they've agreed in the district court that the finding of normal fine finger manipulation was inconsistent with the limitation to occasional fingering, and they haven't made any argument about the ALJ's finding about reaching. It's just focused on the handling. Okay. Well, thank you, Mr. Truitt. Mr. Schultz, it's time to see you. First, in the district court, plaintiff actually did not concede that there was no issue with fingering, but plaintiff did say that it may be that normal fingering is inconsistent with limitation in fingering. Plaintiff, that was more like an arguendo kind of statement. What about the sentence that Mr. Truitt just read from page 12 of the ALJ's opinion? That the findings of 5'5", muscle strength, et cetera, are inconsistent with his conclusion about, you know, can't work eight hours? That's where the... Well, in terms of the handling, that's where our argument concerning the grip strength comes in, because the ALJ doesn't mention that finding at all. Which finding? Reduced grip strength in both hands, and that grip strength actually goes more to the point of the ability to handle than overall upper arm muscle strength, according at least to the sources that we cited to. So the ALJ should have either evaluated that grip strength finding somehow or contacted the doctor about that. In terms of the... Does he mention grip strength? No, he does not mention it at all in the decision. In addition, in terms of the working eight hours a day, the ALJ kind of makes this general statement that, well, normal muscle strength and sensation don't support the doctor's opinion. But Dr. Holton made significant other findings, such as the claimant had halting movements when she got up off of a chair and getting on and off the exam table. She would not even do what are called the walking maneuvers of walking on your toes or your heels, because she didn't believe that she could do them. And previous records show she had significant problems doing those things. There's evidence of very significant degenerative disc disease in the lumbar sacral spine. So just because certain findings were normal, that doesn't allow the ALJ to overturn the finding of an examining doctor that said, I don't believe she could work an eight-hour day. Thank you. Okay, well, thank you very much to both counselors.